OPINION
{¶ 1} Defendant-appellant, Ralph R. Bolish, appeals his conviction and sentence in the Butler County Court of Common Pleas on one count of operating a motor vehicle under the influence ("OVI") in violation of R.C. 4511.19(A)(1)(a), a felony of the fourth degree, with a specification pursuant to R.C.2941.1413 for certain repeat OVI offenders, and one count of driving under suspension in violation of R.C. 4510.11(A), a misdemeanor of the first degree.
 {¶ 2} At approximately 10:15 p.m., on November 30, 2004, Fairfield Police Officer John Cresap was dispatched to the scene of a one-car accident in the vicinity of the Frisch's Restaurant near the intersection of State Route 4 and Seward Road in the City of Fairfield, in Butler County, Ohio. Upon arrival, Officer Cresap saw a blue Mazda Miata parked in front of Frisch's, partly in the grass and partly on the roadway, with damage to its undercarriage. After speaking briefly with several bystanders who told him what they had seen, Officer Cresap saw appellant standing next to the Miata, swaying back and forth. Officer Cresap saw that appellant was bleeding from lacerations to his face and hand.
 {¶ 3} Officer Cresap walked over to appellant and immediately noticed a strong odor of alcoholic beverage. He also noticed that appellant was unsteady on his feet and would not stand still, and that appellant's eyes were "glassy" and "bloodshot." When Officer Cresap asked appellant what had occurred, appellant told him that a "semi" had forced him over the median, causing him to crash on the curb. However, Officer Cresap saw no evidence that a semi had been involved in the accident. Officer Cresap then asked appellant where he was coming from, and appellant told him that he was coming from a bar in Springdale, where he had had six beers, and that he had been going to his girlfriend's house. When Officer Cresap asked appellant for his driver's license, appellant told him that he did not have a license because he was under an OVI suspension. Appellant handed Officer Cresap an Ohio identification card, instead.
 {¶ 4} During his conversation with appellant, Officer Cresap noticed that it was difficult to understand appellant at times because his speech was very slurred, he talked very fast, and he appeared to be "in a daze." On one occasion, Officer Cresap had to assist appellant to steady him. Appellant told Officer Cresap that he did not want to go to the hospital. Officer Cresap told appellant that he did not have to go to the hospital, but he wanted to him to get looked at by the emergency personnel who had arrived at the scene. Consequently, Officer Cresap walked appellant over to the ambulance for treatment.
 {¶ 5} After appellant's lacerations were treated, Officer Cresap placed appellant under arrest for operating a motor vehicle under the influence and driving under suspension. Appellant was advised of his Miranda rights, as he was being handcuffed. He was then taken to the Fairfield police station where he was read another constitutional rights form. After that, he was booked and photographed, and a BMV 2255 form was read to him, advising him of the consequences of not taking a breathalyzer test. Appellant signed the BMV 2255 form, but refused to take the breathalyzer test.
 {¶ 6} Appellant was indicted on one count of operating a motor vehicle under the influence ("OVI") in violation of R.C.4511.19(A)(1), a felony of the fourth degree, with a specification pursuant to R.C. 2941.1413 alleging that appellant, within 20 years of committing the current OVI offense, previously had been convicted of or pleaded guilty to five or more equivalent offenses ("Count One"). Appellant was also indicted on one count of driving under suspension in violation of R.C.4510.11(A), a misdemeanor of the first degree ("Count Two"). Appellant entered a plea of "not guilty" to these charges.
 {¶ 7} Prior to his trial, appellant moved to suppress any statements he made to the police on the night of his arrest. After holding a hearing on appellant's motion, the trial court overruled it.
 {¶ 8} On September 1, 2005, appellant was tried to a jury on the charges on which he was indicted. The jury found appellant guilty as charged, and the trial court sentenced appellant to consecutive, two-year terms on both the OVI charge in Count One, as well as the accompanying specification to that charge, and to a six-month term on the DUS charge in Count Two, which was to run concurrently with his sentence on the OVI charge in Count One.
 {¶ 9} Appellant now appeals his conviction and sentence, raising six assignments of error, which we shall address in an order that facilitates our analysis.
 {¶ 10} Assignment of Error No. 4:
 {¶ 11} "THE TRIAL COURT ERRED BY DENYING DEFENDANT'S MOTION TO SUPPRESS STATEMENTS."
 {¶ 12} Appellant argues that the trial court erred in overruling his motion to suppress any statements he made to police because he "did not receive adequate Miranda warnings, nor was a knowing and voluntarily executed written waiver executed by [him] prior to him making any statements which were the basis of his conviction." We disagree with this argument.
 {¶ 13} "[W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege[.]" Miranda v.Arizona (1966), 384 U.S. 436, 478-479, 86 U.S. 1602. The suspect must be advised prior to any questioning that he has the right to remain silent; that anything he says can be used against him in a court of law; that he has the right to the presence of an attorney; and that if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires. Id. at 479.
 {¶ 14} The police are not required to issue Miranda
warnings to everyone they question; rather they must issue such warnings only when they subject a suspect to "custodial interrogation." State v. Biros, 78 Ohio St.3d 426, 440,1997-Ohio-204. "Custodial interrogation" is defined as questioning initiated by a law enforcement officer after a person has been taken into custody "or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. 436, 444. The determination of whether or not a custodial interrogation has occurred requires an inquiry into how a reasonable person in the suspect's position would have understood his situation; the ultimate question is whether there was a formal arrest of the suspect or restraint on the suspect's freedom of movement to a degree associated with a formal arrest. Biros,78 Ohio St.3d 426, 440.
 {¶ 15} Spontaneous or volunteered statements are not considered the product of "custodial interrogation," and therefore are admissible even though Miranda warnings were not issued at the time they were made. See State v. Martin,151 Ohio App.3d 605, 619, 2003-Ohio-735 (police were not required to take defendant into custody and issue Miranda warnings to him in order to question him about a murder, where defendant provided statements to police voluntarily and in a non-custodial setting); see, also, State v. Tibbetts, 92 Ohio St.3d 146, 155,2001-Ohio-132 (defendant's statements to police following his invocation of his right to terminate questioning were admissible because the statements were volunteered by defendant).
 {¶ 16} General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process ordinarily does not constitute a custodial interrogation, since such questioning is only an attempt to elicit basic facts relative to the officer's investigation. Miranda, 384 U.S. at 477, 86 S.Ct. 1602. See, also, State v. Garland (1996), 116 Ohio App.3d 461, 470 (police officer's roadside questioning of a motorist at the scene of an automobile accident did not necessitate issuance of Miranda
warnings because the questioning constituted on-scene questioning done as part of the normal fact-finding process, rather than custodial interrogation).
 {¶ 17} In this case, appellant was never subjected to "custodial interrogation" by any law enforcement officer. When Officer Cresap arrived at the scene, he engaged in the type of on-scene questioning that is typically done as part of the normal fact-finding process. See Miranda, 384 U.S. at 477, andGarland, 116 Ohio App.3d at 470. The evidence shows that Officer Cresap was as concerned with appellant's physical well-being as he was with investigating the crime. For example, Officer Cresap told appellant that he did not have to go to the hospital, but insisted that he have his injuries looked at by the emergency personnel. Furthermore, appellant's statement to Officer Cresap that he had had six beers was not in response to a specific question from Officer Cresap asking him how much he had to drink, but instead, was information volunteered by appellant after Officer Cresap had asked appellant where he had been coming from. Officer Cresap issued Miranda warnings to appellant at the time he placed him under formal arrest.
 {¶ 18} Under these circumstances, no reasonable person in appellant's position would have believed that his freedom of movement was being restrained by Officer Cresap to a degree associated with a formal arrest until the point at which Officer Cresap actually did place appellant under formal arrest, at which time he handcuffed appellant and issued Miranda warnings to him. Biros, 78 Ohio St.3d 426, 440. Therefore, all of the statements appellant made to Officer Cresap before he was placed under formal arrest were not the product of custodial interrogation, and Officer Cresap was not required to issueMiranda warnings to appellant before appellant made those statements in order for them to be deemed admissible. Id.
 {¶ 19} Furthermore, any statements that appellant made to police after he had been issued Miranda warnings — i.e., that he did not care any longer because he had a terminal illness and was dying — were voluntarily and spontaneous, and therefore were not inadmissible. See Tibbetts, 92 Ohio St.3d 146, 154-155.
 {¶ 20} In light of the foregoing, we conclude that the trial court did not err by overruling appellant's motion to suppress his statements to police on the basis of an alleged violation of appellant's Miranda rights.
 {¶ 21} Appellant's fourth assignment of error is overruled.
 {¶ 22} Assignment of Error No. 5:
 {¶ 23} "THE TRIAL COURT IMPROPERLY DETERMINED EXHIBIT 6, EXHIBIT 7 AND EXHIBIT 8 WERE ADMISSIBLE PURSUANT TO EVIDENCE RULE 803(8) AND O.R.C. [SECTION] 2949.75."
 {¶ 24} Appellant argues that the trial court abused its discretion in admitting appellee's Exhibits 6, 7, and 8, which allowed appellee to prove that appellant was guilty of the specification to Count One of the indictment. We disagree with this argument.
 {¶ 25} In order to prove the specification to Count One of the indictment, the state had to establish that appellant, within 20 years of the offense of OVI with which he was charged in Count One, "previously had been convicted of or pleaded guilty to five or more equivalent offenses." R.C. 2941.1413.
 {¶ 26} R.C. 2945.75 states, in pertinent part:
 {¶ 27} "(B) Whenever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior convictions."
 {¶ 28} Evid.R. 803 states, in pertinent part:
 {¶ 29} "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 {¶ 30} "* * *
 {¶ 31} "(8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness."
 {¶ 32} To establish appellant's guilt with respect to the specification, appellee, pursuant to R.C. 2945.75(B), introduced into evidence certified copies of five of appellant's prior convictions for OVI or an equivalent offense, which occurred within 20 years of his having committed the OVI offense with which he was charged in Count One. These certified copies of appellant's five prior OVI convictions were admitted into evidence as appellee's Exhibits 6, 7, 8, 9, and 10.
 {¶ 33} Appellant does not dispute the admissibility of appellee's Exhibit 9, which was admitted to prove appellant's 2003 conviction for driving under the influence ("DUI") in Fairfield Municipal Court, or state's Exhibit 10, which was admitted to prove appellant's 2003 conviction for DUI, second offense in six years, in Middletown Municipal Court. However, appellant does dispute the admissibility of appellee's Exhibit 6, 7, and 8.
 {¶ 34} His first objection to these exhibits is that they were not signed by a judge. However, a review of Exhibit 6 shows that appellant's August 26, 1985 conviction for driving under the influence ("DUI") was signed by Judge Mark Painter of the Hamilton County Municipal Court. A review of Exhibit 7 shows that appellant's August 22, 1991 conviction for DUI was signed by Judge David Albanese of the Hamilton County Municipal Court. And a review of Exhibit 8 shows that appellant's December 20, 1995 conviction was signed by Judge James A. Shriver of the Clermont County Municipal Court.
 {¶ 35} Appellant's second objection to the admissibility of these exhibits is that appellee failed to demonstrate that he was the "Ralph Bolish" named in those prior convictions. We disagree with this argument.
 {¶ 36} Appellee presented sufficient evidence to show that appellant's name, date of birth, and social security number, which were contained in appellee's Exhibit 2, matched those contained on each of the prior convictions shown in appellee's Exhibits 6, 7, and 8. Consequently, appellee presented sufficient "evidence to identify the defendant named in the entry as the offender in the case at bar." R.C. 2945.75(B), and the trial court did not err in admitting those exhibits.
 {¶ 37} Appellant's fifth assignment of error is overruled.
 {¶ 38} Assignment of Error No. 6:
 {¶ 39} "THE JURY'S VERDICT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE, AND THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 40} Appellant argues that appellee presented insufficient evidence to establish that he was guilty of the offense of OVI, since "no field sobriety tests were requested or completed, and no blood, breath or urine test was requested or completed." He also argues that his conviction for OVI was contrary to the manifest weight of the evidence. We disagree with these arguments.
 {¶ 41} "In reviewing a claim of insufficient evidence, `[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. McKnight,107 Ohio St.3d 101, 112, 2005-Ohio-6046, quoting State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. In deciding an insufficient evidence claim, a reviewing court may not substitute its evaluation of witness credibility for that of the jury.State v. Benge, 75 Ohio St.3d 136, 143, 1996-Ohio-227.
 {¶ 42} In reviewing a claim that a conviction is against the manifest weight of the evidence, an appellate court applies a different test. McKnight, 107 Ohio St.3d at 112. In considering a manifest weight of the evidence challenge, an appellate court reviews the entire record, weighing the evidence and all reasonable inferences that can be drawn from it, and considers the credibility of witnesses, to determine whether in resolving conflicts in the evidence, "`the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 43} In reviewing a manifest weight of the evidence claim, an appellate court is obligated to consider the credibility of the witnesses and the weight to be given the evidence presented. See Thompkins, 78 Ohio St.3d at 387, quoting Martin,20 Ohio App.3d at 175. However, these issues are primarily matters for the trier of fact to decide since the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence. See State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus; State v. Nichols
(1993), 85 Ohio App.3d 65, 76.
 {¶ 44} In this case, appellee presented ample evidence to convict appellant of operating a motor vehicle under the influence in violation of R.C. 4511.19(A)(1). R.C. 4511.19
states, in pertinent part:
 {¶ 45} "(A)(1) No person shall operate any vehicle * * * within this state, if, at the time of the operation, any of the following apply:
 {¶ 46} "(a) The person is under the influence of alcohol, a drug of abuse, or a combination of them."
 {¶ 47} Officer Cresap's testimony revealed that when he arrived at the scene, he observed appellant's vehicle, a blue Mazda Miata, parked halfway on the grass in front of a Frisch's restaurant, and halfway on the street. Officer Cresap noticed that there was substantial damage to the undercarriage of appellant's vehicle. He also observed appellant standing next to the car, swaying back and forth, and being unsteady on his feet. When he walked over to appellant, Officer Cresap noticed a strong smell of alcoholic beverage on appellant's person; noticed that appellant's eyes were bloodshot and "glassy"; and noticed that appellant's speech was slurred and that he was talking very fast. Officer Cresap, who has at least 18 years of law enforcement experience, concluded at the scene that appellant was very intoxicated. When the evidence is examined in a light most favorable to the state, as it must be for purposes of reviewing the sufficiency of the evidence, see McKnight,107 Ohio St.3d at 112, we conclude that the state presented ample evidence to convict appellant of OVI pursuant to R.C. 4511.19(A)(1)(a).
 {¶ 48} Appellant argues that the jury's verdict was against the manifest weight of the evidence since Officer Cresap did not perform any field sobriety tests on him, nor did anyone perform any blood, breath, or urine tests on him. We disagree with this argument.
 {¶ 49} Officer Cresap provided a plausible explanation as to why he chose not to administer any field sobriety tests to appellant. Specifically, Officer Cresap was reluctant to perform such tests on appellant because, among other things, he believed that appellant was too intoxicated to perform the tests, and he feared that appellant may have injured himself in trying to perform them. Furthermore, it was appellant himself who refused to take the breathalyzer on the night he was arrested.
 {¶ 50} When the evidence is examined in its totality, it is apparent that the evidence weighs heavily in favor of finding appellant guilty of OVI. Consequently, appellant's conviction for OVI was not against the manifest weight of the evidence.Thompkins, 78 Ohio St.3d 380, 387.
 {¶ 51} Appellant's sixth assignment of error is overruled.
 {¶ 52} Assignment of Error No. 2:
 {¶ 53} "THE TRIAL COURT ERRED AS A MATTER OF LAW BY IMPOSING MORE THAN THE MINIMUM SENTENCE WITHOUT SPECIFICALLY FINDING THE FACTORS SET FORTH IN R.C. 2929.14(B)."
 {¶ 54} Appellant argues that the trial court "did not adequately articulate on the record * * * the reason(s) why it imposed more than the minimum prison sentence[,]" and therefore, pursuant to R.C. 2929.14(B), his sentence must be modified to the minimum sentence allowed for the offenses on which he was convicted.
 {¶ 55} Appellee disputes appellant's contention that the trial court failed to adequately articulate its reasons for imposing more than the minimum sentence allowed on appellant, but concedes that appellant's sentence must be vacated and the matter remanded for re-sentencing consistent with State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856. We agree with appellee's position.
 {¶ 56} The first four paragraphs of the syllabus in Foster
state, as follows:
 {¶ 57} "1. Because R.C. 2929.14(B) and (C) and 2929.19(B)(2) require judicial fact-finding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant, they are unconstitutional. (Apprendiv. New Jersey [2000], 530 U.S. 466, 120 S.Ct. 2348,147 L.Ed.2d 435, and Blakely v. Washington [2004], 542 U.S. 296,124 S.Ct. 2351, 159 L.Ed.2d 403, followed.)
 {¶ 58} "2. R.C. 2929.14(B) and (C) and 2929.19(B)(2) are capable of being severed. After the severance, judicial fact-finding is not required before a prison term can be imposed within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant. (United States v. Booker
(2005), 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621, followed.)
 {¶ 59} "3. Because R.C. 2929.14(E)(4) and 2929.41(A) require judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before the imposition of consecutive sentences, they are unconstitutional. (Apprendi v. New Jersey [2000], 530 U.S. 466, 120 S.Ct. 2348,147 L.Ed.2d 435, and Blakely v. Washington [2004],542 U.S. 296, 124 S.Ct. 2351, 159 L.Ed.2d 403, followed.)
 {¶ 60} "4. R.C. 2929.14(E)(4) and 2929.41(A) are capable of being severed. After the severance, judicial fact-finding is not required before imposition of consecutive prison terms. (UnitedStates v. Booker [2005], 543 U.S. 220, 125 S.Ct. 738,160 L.Ed.2d 621, followed.)
 {¶ 61} In this case, the trial court imposed a nonminimum sentence on appellant for his conviction on the specification to Count One of the indictment after making the findings set forth in R.C. 2929.14(B), to wit: that the shortest prison would demean the seriousness of the offender's conduct and would not adequately protect the public from future crime by the offender or others.
 {¶ 62} The trial court also ordered appellant to serve his sentence for OVI, as charged in Count One, consecutive to his sentence on the specification to Count One. In order to impose consecutive sentences, the trial court, before Foster, was required to make the findings set forth in R.C. 2929.14(E)(4).
 {¶ 63} Pursuant to Foster, R.C. 2929.14(B) and2929.14(E)(4) are unconstitutional because those provisions either require judicial fact-finding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of a defendant, R.C. 2929.14(B), or require judicial fact-finding before imposition of consecutive sentences, which facts have not been proven to a jury beyond a reasonable doubt or admitted by the defendant, R.C. 2929.14(E)(4). Foster,109 Ohio St.3d 1, paragraph one and three of the syllabus. Therefore, pursuant to Foster, appellant's sentence on Count One and its specification must be vacated, and this case must be remanded for resentencing in accordance with that decision. SeeFoster, 109 Ohio St.3d at 31, ¶ 104.
 {¶ 64} Appellant's second assignment of error is sustained to the extent indicated.
 {¶ 65} Assignment of Error No. 1:
 {¶ 66} "THE TRIAL COURT ERRED AS A MATTER OF LAW BY IMPROPERLY SENTENCING APPELLANT."
 {¶ 67} Appellant argues that "the trial court failed to properly reference the sentencing guidelines before passing sentence" on him for his convictions on Count One and the accompanying specification. We disagree with this argument.
 {¶ 68} Initially, for the reasons that we have stated in response to appellant's second assignment of error, this matter needs to be remanded for resentencing in accordance withFoster, 109 Ohio St.3d 1. The Foster court stated in paragraph seven of the syllabus, as follows:
 {¶ 69} "Trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more that the minimum sentences."
 {¶ 70} Consequently, on remand, the trial court will not need "to properly reference the sentencing guidelines before passing sentence" on appellant since trial courts are "no longer required to make findings or give reasons for imposing maximum, consecutive, or more than the minimum sentences." Foster,109 Ohio St.3d 1, paragraph seven of the syllabus.
 {¶ 71} Appellant's first assignment of error is overruled.
 {¶ 72} Assignment of Error No. 3:
 {¶ 73} "THE TRIAL COURT ERRED AS A MATTER OF LAW BY IMPROPERLY SENTENCING APPELLANT PURSUANT [TO] R.C. 2929.13(G)(2)."
 {¶ 74} Appellant argues that trial court erred "as a matter of law" by not sentencing him to a community control sanction or by not placing him "in an intensive program prison," pursuant to R.C. 2929.13(G)(2). We disagree with this argument.
 {¶ 75} R.C. 2929.13(G) states, in pertinent part:
 {¶ 76} "(2) * * * [I]f the offender is being sentenced for a fourth degree felony OVI offense and the court does not impose a mandatory term of local incarceration under division (G)(1) of this section, the court shall impose upon the offender a mandatory prison term of one, two three, four, or five years if the offender also is convicted of or also pleads guilty to a specification of the type described in section 2941.1413 * * * of the Revised Code * * *. * * * In addition to the mandatory prison term described in division (G)(2) of this section, the court may sentence the offender to a community control sanction under section 2929.16 or 2929.17 of the Revised Code, but the offender shall serve the prison term prior to serving the community control sanction. The department of rehabilitation and correction may place an offender sentenced to a mandatory prison term under this division in an intensive program prison established pursuant to section 5120.033 * * * of the Revised Code if the department gave the sentencing judge prior notice of its intent to place the offender in an intensive program prison established under that section and if the judge did not notify the department that the judge disapproved the placement."
 {¶ 77} R.C. 2929.13(G)(2) provides that a trial court may
sentence a fourth-degree felony OVI offender to a community control sanction under R.C. 2929.16 or 2929.17, in addition to the mandatory prison term that the trial court must impose on the offender, but the offender must serve the mandatory prison term prior to serving the community control sanction. R.C.2929.13(G)(2).
 {¶ 78} The decision as to whether or not to impose a community control sanction on a fourth-degree felony OVI offender like appellant is a matter within the trial court's discretion. See R.C. 2929.13(G)(2) ("In addition to the mandatory prison term described in division [G][2] of this section, the court may
sentence the offender to a community control sanction[.]" [Emphasis added.]) We see no abuse of discretion in the trial court's decision not to impose a community control sanction on appellant in addition to a mandatory prison term on him.
 {¶ 79} Appellant requests that we remand this matter to the trial court with instructions ordering the trial court "to obtain a recommendation to place [him] in an intensive program prison." However, appellant cites no provision in R.C. 2929.13(G)(2), nor any case law that would authorize this court to follow his request. Instead, R.C. 2929.13(G)(2) leaves it in the discretion of the department of rehabilitation and correction to place an offender sentenced to a mandatory prison term in an intensive program prison, if the department gives the sentencing judge prior notice of its intention do so, in order to allow the judge to disapprove the placement. See R.C. 2929.13(G)(2).
 {¶ 80} In this case, it appears that the department of rehabilitation never gave the trial court notice of its intention to place appellant in an intensive program prison. Consequently, the trial court had no opportunity to register its approval or disapproval of such a placement. As we have indicated, appellant cites no authority in support of his contention that he was entitled to be placed in an intensive program prison, nor are we aware of any. Therefore, we reject appellant's argument that the trial court erred "as a matter of law" by improperly sentencing appellant pursuant to R.C. 2929.13(G)(2).
 {¶ 81} Appellant's third assignment of error is overruled.
 {¶ 82} The trial court's judgment is reversed as to sentencing only on Count One and its specification and remanded for further proceedings according to law and consistent with this Opinion.
Powell, P.J., and Young, J., concur.